JESSE A. ALLEN v. CITY OF MILLVILLE.

Submitted December 3, 1914—Decided July 9, 1915.

1. The actual knowledge of the occurrence of an injury required by the Workmen's Compensation act means, in the case of a corporation, knowledge of the proper corporate agent.
2. The actual knowledge of the occurrence of any injury required by the Workmen's Compensation act does not mean the first-hand knowledge of an eye witness, but what would be called knowledge in common parlance.

On *certiorari* to the Cumberland Pleas.

This is a proceeding under the Workmen's Compensation act.

Allen was employed by the city on street work. Kates was director of streets and public improvements of the city. In his private capacity he owned and employed teams on different kinds of work, but none of them were employed by or for the city of Millville.

In his employ was a driver, Robert Chambers, who, on the morning of the accident, was carting freight for Kates. Albert Thompson was an employe of the city who, by the direction of Kates, was to get certain planking and lay it

on top of some newly-laid concrete so that wagons could pass over. Thompson asked Chambers to take Kates' team and go after the planking and requested Allen to go with Chambers, which Allen did. In some way Allen was thrown from the wagon and injured. This proceeding is brought to recover compensation of the city for his injuries.

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Louis H. Miller.*

For Allen, *Herbert C. Bartlett.*

The opinion of the court was delivered by

SWAYZE, J. We think the evidence justified the finding by the trial judge that the accident arose out of and in the course of the employment. The question whether the city can be said to have had actual knowledge of the occurrence of the injury is difficult. The words must mean something different from mere notice, since section 16 of the statute makes special provision for the service of notice in language that can only be satisfied by written notice, and this notice is the "notice referred to" which can mean only the notice mentioned in section 15. What the legislature meant by actual knowledge is not clear. A private or a municipal corporation, as a legal entity, cannot itself have knowledge. If it can be said to have knowledge at all, that must be the imputed knowledge of some corporate agent. The act would fail of its purpose unless it were applicable to corporate as well as to individual employers. We think, therefore, that the knowledge of the proper corporate agent must be regarded as, in legal effect, the knowledge of the corporation. If we are right in this construction of the statute there can be no doubt that the knowledge of Mr. Kates was the knowledge of the city, since he was the commissioner actually in charge of the work on which Allen was employed.

The next question is whether Kates had actual knowledge. He did not in the sense that he saw the injury and knew of

it first hand, so that he could properly testify as a witness. We think, in spite of the use of the word "actual" to qualify the knowledge required, that first-hand personal knowledge is not what is meant. We rest this conclusion upon the subsequent language of section 15. This makes it clear that the knowledge required is that sort of knowledge which may be obtained, since it suffices if "the knowledge is obtained within thirty days from the occurrence of the injury," to use the language of the statute; and if the employe or other beneficiary shall show that his failure to give prior notice was due to mistake, inadvertence, ignorance of fact or law, or inability, or to the fraud, misrepresentation or deceit of another person, or to any other reasonable cause or excuse, then knowledge obtained within ninety days suffices, unless the employer was prejudiced by failure to receive the notice required. Clearly, knowledge obtained thirty days after the occurrence of the injury cannot be the first-hand knowledge of an eye witness. The language indicates what would be called knowledge in common parlance, such knowledge as most of us are confined to in the daily affairs of life. The trial judge might fairly find that Mr. Kates had such knowledge. When asked how he knew of it, he answered that one of his drivers notified him of it the next morning. He went to see how badly hurt Allen was, and took him the wages due, and he seems to have entertained no doubt as to the manner in which the injury happened.

The chief argument relied upon by the city was that the act of 1913 (*Pamph. L., p.* 230) is unconstitutional. Some of the objections have already been disposed of by opinions of the Court of Errors and Appeals. We need notice only three:

1. That the title does not express the object of legislating as to persons occupying public positions as distinguished from servants of private employers;

2. That it deprives the municipalities of their property without due process of law; and

3. That it deprives them of the equal protection of the laws, since it imposes liability only in favor of those receiving

less than twelve hundred dollars per year and not holding an elective office.

As to the title, the argument seemed to assume that the title indicates only an intent to legislate as to masters and servants. That is not the language. On the contrary, the words used are employer and employe, words surely adapted to the relation of a city and its employes. Moreover, section 23 of the act expressly enacts that employer is synonymous with master and includes corporations; employe is synonymous with servant and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments. *Rongo* v. *Waddington,* recently decided (*post p.* 395).

The other objections seem almost frivolous in view of the well settled right of the legislature to control municipalities as subordinate legislative agencies. It is enough to cite *Board of Education* v. *State Board,* 81 *N. J. L.* 211, affirmed under title of *Glazer* v. *Flemington,* 85 *Id.* 384; and as to the federal question. *Hunter* v. *Pittsburgh,* 207 *U. S.* 161.

The judgment is affirmed, with costs.